George H. Martin and Irene Martin v. Commissioner.
Martin v. Commissioner
Docket No. 70846.
United States Tax Court
T.C. Memo 1960-217; 1960 Tax Ct. Memo LEXIS 74; 19 T.C.M. (CCH) 1216; T.C.M. (RIA) 60217; October 11, 1960
Downey Rice, Esq., for the petitioners. Paul D. Ritter, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax of petitioners in the amount of $281.46 for the year 1956. The sole issue is whether petitioners are entitled to a deduction of $1,407.29 for travel expenses. Findings of Fact Petitioners, husband and wife, are residents of Trenton, New Jersey. They filed a joint income tax return for the year 1956 with the director of internal revenue at Camden, New Jersey. Prior to July of 1953, petitioners resided in Scranton, Pennsylvania. In February of 1953, *75 while living in Scranton, George H. Martin (hereinafter referred to as the petitioner) was employed as Assistant Director of Public Relations for the Chase Aircraft Company in Trenton, New Jersey. He then disposed of his home in Scranton and bought a home in Trenton. Since July of 1953, he and his family have resided in their Trenton home, have attended church in Ewing Township, and have paid property and school taxes in that area. Although petitioner recognized that there is no permanence attached to any employment, he considered the job with Chase Aircraft Company to be "permanent" when he took it. His employment with this company was terminated about December 1, 1953, when a contract it had with the Government was cancelled. During 1954, 1955 and 1956, petitioner had no regular employment in Trenton. During those years he sought employment in Trenton by applying to a private employment agency, the New Jersey State Employment Office, The Trenton Times, Curtiss Wright, and others, but there was no "market" for his services in the Trenton area. During a portion of the year 1954 he drew unemployment compensation from the state of New Jersey. Sometime between December 25, 1953, and *76 January 1, 1954, petitioner went to Florida to work as an investigator for a "citizens' committee" of businessmen of Miami Beach, Florida. He was employed in this capacity for a period of four to five weeks. For about four months prior to June 1954, petitioner was employed as an investigator by a subcommittee of the Government Operations Committee of the House of Representatives. While employed by this committee, his place of employment was Washington, D.C. His work for the subcommittee was performed in Washington, Minneapolis, the area of New York and New Jersey, and Philadelphia. He was paid a per diem allowance for expenses by the Government while working away from Washington for the subcommittee. He did not receive a per diem allowance for expenses while working for it in Washington. He completed his investigative work for the subcommittee about May 10, 1954, and prepared a final report to the subcommittee between May 10 and May 30, 1954, at his home in Trenton. In the early part of 1955, petitioner was employed for approximately two to four weeks by Daniel O'Connor, a Washington, D.C., attorney. O'Connor came to Trenton in connection with an investigation of the Chase Aircraft *77 Company, and when he learned that petitioner had formerly worked for Chase, he retained petitioner in connection with the investigation. Petitioner performed his work for O'Connor in the New Jersey area (including Trenton), in Philadelphia, and in Washington. In his return for the year 1955 he reported that the place where he was employed by O'Connor was Washington, D.C. Petitioner was paid on a per diem arrangement, with expenses. From May 2 until November 15, 1955, petitioner was employed by the Juvenile Delinquency Subcommittee of the Senate Judiciary Committee. His place of employment while working for this subcommittee was Washington, D.C. He performed investigative work for it in various parts of the country, including New York, Chicago, Los Angeles, and Philadelphia. He received per diem reimbursement for expenses incurred away from Washington. From January to the latter part of April 1956, petitioner was employed by the law firm of Rice and King in Washington. D.C., to perform investigative work involving "assignments" in New Jersey, New York, and Pennsylvania; and to perform legal research in the State House in Trenton, New Jersey. He was compensated on a daily basis for *78 his work for Rice and King, but did not receive the compensation until 1959. On May 21, 1956, petitioner was employed by the Commission on Government Security as an investigator. During 1956 the salary he received from the Commission amounted to $5,186.55. His post of duty while working for the Commission was Washington, D.C. From August 24, 1956 to September 24, 1956, and from December 13, 1956 to December 31, 1956, he worked in New York City for the Commission. While working in New York City, he received a per diem allowance from the Government in lieu of subsistence. Public Law 304, 84th Cong., 1st Sess., required the Commission to submit its final report not later than December 31, 1956, but the time for the submission of this report was extended by Public Law 786, 84th Cong., 2d Sess., to June 30, 1957. Petitioner's employment with the Commission terminated on June 14, 1957, at which time he returned to Trenton temporarily. While petitioner was employed by the Commission on Government Security in Washington in 1956, he would go to his Trenton home on weekends, traveling by train to Trenton on Friday evening and returning to Washington by train on Monday morning. He made eighteen *79 such round trips between Trenton and Washington. and one one-way trip. On the nights that petitioner was in Washington while employed by the Commission, he stayed at the Bellevue Hotel. He stayed at that hotel seventy-five days during that period at a cost of $4.00 per day. He estimated that the cost of his meals while in Washington was $4.00 per day. Petitioner received no reimbursement from the Government for amounts expended by him during 1956 for meals and lodging while in Washington or for train fare on trips to and from Trenton. On their 1956 return, petitioners claimed travel expenses incurred during employment with the Commission on Government Security in the amount of $1,718.74. Of this amount, $311.45 was listed as reimbursed expenses to offset inclusion of a similar amount in income. The remaining amount of $1,407.29 was claimed as a deduction for unreimbursed travel expenses. The amount of $1,407.29 claimed as unreimbursed travel expenses consisted of: Railroad fares for interviews in
connection with employment
$ 140.04
Hotel expenses for 99 days
407.88
Twenty-six round-trip railroad
fares between Washington and
Trenton
344.76
One one-way railroad fare between
Washington and Trenton
6.63
Meals for 127 days at $4.00 per day
508.00
$1,407.31
Less: Petitioners' mathematical
error
.02
$1,407.29
*80 Opinion RAUM, Judge: Petitioner contends that the amounts claimed by him in his 1956 return for expenses of travel between Trenton and Washington, and for meals and lodging while employed by the Commission on Government Security in Washington, constitute allowable deductions for traveling expenses while away from home in the pursuit of a trade or business. The pertinent provisions of the Internal Revnue Code of 1954 are set forth in the margin. [1]
*81 Petitioner's argument may be summarized as follows: There was no market for his services in Trenton where his residence was located after the termination of his employment by the Chase Aircraft Company in that city on December 1, 1953. During the next three years he performed varied services for the Government and two law firms in Washington, D.C. None of these jobs had any prospect of permanence and while employed on them he spent most of his time away from Washington. Because he had reason to believe that his employment with the Commission on Government Security would not last longer than December 31, 1956, the date originally set for its demise in the law creating it, his employment by the Commission was temporary and the expense he incurred in traveling from Trenton to Washington and return and the cost of food and lodging while in Washington qualify as traveling expenses while away from home within the meaning of the applicable statutes. We do not agree with petitioner. During the year 1956, and the two preceding years, he had no regular employment in Trenton, where he maintained a residence for himself and his family. During the period May 21, 1956 to June 14, 1957, he was *82 an employee of the Commission on Government Security in Washington, D.C. His post of duty and principal place of employment was in Washington. Because his post of duty was in Washington he was paid transportation costs and a per diem allowance in lieu of subsistence while away from Washington performing services for the Commission. Amounts paid to him for such expenses are not in issue. The amounts he claims as deductions represent the cost of food and lodging while in Washington and the cost of transportation on weekends to and from the residence he maintained for himself and his family in Trenton. Washington was his "tax home", and the expenses in controversy were not incurred while away from that tax home in connection with the performance of his duties as an employee of the Commission. Cf. Commissioner v. Flowers, 326 U.S. 465; Mort L. Bixler, 5 B.T.A. 1181; Ray A. Smith, 33 T.C. 1059. They were personal and living expenses which are not deductible under the provisions of Section 262 of the Internal Revenue Code of 1954. The present case is sharply to be distinguished from cases like Joseph H. Sherman, Jr., 16 T.C. 332, *83 where the taxpayer had substantial employment at the place of his actual residence. It is similarly unlike Coburn v. Commissioner, 138 F. 2d 763 (C.A. 2), relied upon by petitioner, where the Court of Appeals, reversing a Memorandum Opinion of this Court, held that a taxpayer continues to have his "home" at his regular post of duty if only temporarily employed at a location away from (p. 764) "the place where he is regularly employed or customarily carries on business during the taxable year", and is entitled to deduct expenses of travel incurred in connection with his temporary employment. Petitioner differs from the taxpayer in the Coburn case in that Trenton, where he maintained his residence, was not the place where he was regularly employed or customarily carried on business during the taxable year 1956. As already noted, he had had no regular employment in Trenton after his job with the Chase Aircraft Company was terminated in December of 1953. We have examined the various other decisions cited by petitioner and find them distinguishable. In none of them was there the combination of circumstances presented here. In the instant case, not only was petitioner without *84 any regular business or employment at the place of his residence (Trenton) for an extended period of time, including the taxable year, but his actual post of duty was so definitely fixed in another place (Washington) that when he was away from that other place on business he was reimbursed for his traveling and related living expenses. We hold that the respondent did not err in disallowing the deduction claimed by petitioners as traveling expenses in their return for the year 1956. Decision will be entered for the respondent. Footnotes
1. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * *
(2) Trade and business deductions of employees. - * * *
(B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In general. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩